IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MARYLAND

IN RE: DOROTHY WHITNEY          :

MICHAEL NEWMAN                  :

    Appellant                   :

    v.                          :    Civil Action No. DKC 2007-2279

DOROTHY WHITNEY, ET AL.         :

    Appellee                    :

                         **MEMORANDUM OPINION**

   Presently pending and ready for resolution is Appellant Michael Newman's appeal from the Order of United States Bankruptcy Judge Thomas J. Catliota avoiding transfer of Appellees' property. Oral argument is deemed unnecessary because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument. *See* Fed.R.Bankr.P. 8012. For the reasons that follow, the court will affirm the bankruptcy court's judgment avoiding transfer of the Property.

**I.  Background**

   The following facts are undisputed. Prior to March 2, 2005, Dorothy and James Whitney owned the property located at 13504 Leesburg Place, Upper Marlboro, Maryland (the "Property"). The Property has been and remains the Whitney's residence for all times relevant to this matter. In late 2004, the Whitneys fell behind in their monthly mortgage payments and a foreclosure sale was

scheduled for March 2, 2005.  The Whitneys needed $11,174.58 to cure the defaults on the first deed of trust and reinstate the mortgage.  At the time, the Property had a fair market value of $250,000.  Seeking to stop the foreclosure sale, the Whitneys contacted Providence Mortgage, through which they came into contact with Appellant Michael Newman.

On the eve of the foreclosure sale, Appellant came to the Property to meet the Whitneys for the first time.  After discussing the impending foreclosure sale, Appellant presented the Whitneys with unsigned copies of the following documents: (1) a quitclaim deed reflecting that the Whitneys would quitclaim the Property to Appellant for $32,000; (2) a quitclaim bill of sale to the same effect; and (3) a promissory note for $32,000.  Mrs. Whitney asked Appellant why the promissory note was for $32,000 when the approximate debt was $11,000.  Appellant explained that the additional money covered his fee for undertaking the transaction. Appellant left the unsigned documents with the Whitneys and the parties agreed that if the Whitneys chose to enter into the transaction, the parties would execute the documents the following morning prior to the 10:00 A.M. foreclosure sale.  Later in the evening of March 1, Mrs. Whitney contacted Appellant to inform him that the Whitneys intended to enter into the deal.

The next morning, the Whitneys met Appellant at the Circuit Court for Prince George's County and executed the deed, bill of

2

sale, and promissory note. Specifically, the parties signed (1) a deed conveying the Property to the Defendant and reciting consideration for the conveyance in the amount of $157,000; (2) a promissory note from the Whitneys payable to the order of Appellant for $32,000; (3) a quitclaim deed quitclaiming the Whitneys' interest in the Property to Appellant and reciting consideration for the conveyance in the amount of $32,000; (4) a quitclaim bill of sale conveying to Appellant the rights, title and interest held by the Whitneys subject to prior liens and encumbrances. The Property was encumbered by liens totaling $190,000. Appellant then delivered $11,174.58 to the law firm conducting the foreclosure sale and the sale was cancelled.

The parties believed they had entered into a financing transaction rather than a sale. The parties thought that Appellant was lending the Whitneys funds so they could get their financial affairs in order and eventually refinance the home and repay Appellant. There was no due date on the promissory note and the Whitneys expected to repay the Appellant when they completed the refinance transaction.

After March 2, 2005, the Whitneys continued to reside at the Property and in May 2005, they resumed making monthly mortgage payments. As part of the March 2 transaction, Appellant had paid the April 2005 mortgage payment. In November 2005, the Whitneys began the process of refinancing the Property. They had been

unable to refinance earlier than November and had not yet made any payments to Appellant on the promissory note.  The Whitneys were unable to complete the refinancing transaction because Appellant had recorded the deed in his name on November 4, 2005.  Appellant had not contacted the Whitneys since mid-March and gave them no notice that he was planning to record the deed.  By November 5, 2005, the fair market value of the Property had increased to $315,000.

Although the Whitneys paid their mortgage since May 2005, Appellant had made other payments on the Property, including: (1) $1,501.11, the April 2005 payment on first deed of trust loan; (2) $1,602.00 payment to homeowner's association; (3) $1,395.00 payment of property taxes; (4) $3,700.00 recording and filing fee; and (5) $426.40 payment of water and sewage bill. On November 5, 2005, Appellant initiated a landlord/tenant action to have the Whitneys evicted from the Property.

The Whitneys were insolvent for all times relevant to this proceeding.  They filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code on July 27, 2006.  Thereafter, Appellee Timothy P. Branigan was appointed as the Chapter 13 Trustee.

On August 10, 2006, Appellees filed a complaint seeking to avoid the transfer of the Property as a fraudulent conveyance

4

pursuant to 11 U.S.C. § 548(a)(1)(B).[1]  A hearing was held on May 30, 2007 and the parties submitted post-trial briefs.  On July 31, 2007, Judge Catliota issued a Memorandum Opinion and Order in which he entered judgment against Appellant avoiding the transfer of the Property, finding that (1) the date of the transfer was November 4, 2005; and (2) the Whitneys did not receive reasonably equivalent value for the transfer.  The issue Appellant presented for review in this appeal is: "Did the Bankruptcy Court err in its interpretation and application of 11 U.S. Code, § 548 of the United States Bankruptcy Code."

## II. Standard of Review

On appeal from the bankruptcy court, the district court acts as an appellate court and reviews the bankruptcy court's findings of fact for clear error and conclusions of law *de novo*.  *See In re Johnson*, 960 F.2d 396, 399 (4th Cir. 1992); *In re Bryson Props., XVIII*, 961 F.2d 496, 499 (4th Cir. 1992).

## III. Analysis

Section 548(a)(1)(B) of the Bankruptcy Code provides:

> (a)(1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of

---

[1] Appellees also sought to avoid the transfer under 11 U.S.C. § 544 and MD. CODE ANN., COM. LAW, §§ 15-204, 15-207.  Judge Catliota found that the transfer was fraudulent under 11 U.S.C. § 548 and did not address the other grounds.  (*See* App. 79, n.1).  Appellees also brought a common law fraud claim based on Appellant's alleged misrepresentations, which Judge Catliota rejected.  The common law fraud issue has not been raised on appeal.

> an interest of the debtor in property, or any
> obligation (including any obligation to or for
> the benefit of an insider under an employment
> contract) incurred by the debtor, that was
> made or incurred on or within 2 years before
> the date of the filing of the petition, if the
> debtor voluntarily or involuntarily–
>
> * * * *
>
> (B)(i) received less than a reasonably
> equivalent value in exchange for such
> transfer or obligation; and
>
> (ii)(I) was insolvent on the date that such
> transfer was made or such obligation was
> incurred, or became insolvent as a result of
> such transfer or obligation[.]

The parties stipulated that the Whitneys were insolvent during the relevant period. The disputed issues are when the transfer occurred and whether the Whitneys received less than a reasonably equivalent value in exchange for the transfer.

The bankruptcy court first tried to determine whether the transfer should be treated as a sale or loan transaction. The court found, however, that it "need not, and cannot, determine whether the transaction was a sale or a loan. The documentation is simply incomprehensible on this point." (Bankr. Paper 68, 7). The court went on to conclude that the Whitneys did not receive reasonably equivalent value for the transfer regardless of whether the transaction was considered a sale or a loan.

Like the bankruptcy court, this court finds that the facts presented below are insufficient to determine with any definiteness whether the transaction was a sale or a loan. As noted by the

bankruptcy court, the nature of the transaction is a mixed question of law and fact. The court will review the bankruptcy court's determination "under a hybrid standard, applying to the factual portion of each inquiry the same standard applied to questions of pure fact and examining *de novo* the legal conclusions derived from those facts." *In re Three Flint Hill Ltd. P'ship*, 213 B.R. 292, 298 (D.Md. 1997) (quoting *Gilbane Bldg. Co. v. Fed. Reserve Bank of Richmond*, 80 F.3d 895, 905 (4th Cir. 1996)).

Many of the facts suggest that the transaction was a sale. The bankruptcy court found that the deed, the quitclaim deed and the bill of sale reflected that the deal was absolute, and there was no evidence indicating that the documents were given as collateral security for a loan by Appellant to the Whitneys. The parties have not challenged the bankruptcy court's finding, and without evidence to the contrary, the court cannot conclude the finding was clearly erroneous.[2] Further, Appellant did not act like a lender after the transaction. He did not send a demand letter or a notice of default, and he had no contact with the Whitneys after mid-March.

---

[2] Although the quitclaim deed, the quitclaim bill of sale, and the promissory note were submitted as evidence at the hearing below, the parties have not included the documents as part of the record on appeal. (*See* App. 33-35, identifying the documents as exhibits 8, 9, and 10, respectively). Appellant designated the deed as part of the record and the court agrees that it is absolute on its face. (Bankr. Paper 33, Ex. 6). The bankruptcy court docket does not show the other exhibits to be part of that record, so the court is unable to direct the record to be supplemented.

Yet, in an act inconsistent with selling their home, the Whitneys signed the promissory note.  A promissory note suggests a financing transaction, even though the bankruptcy court noted that there was no interest rate specified and no schedule for repayment or date on which the note would become due.  Notably, at the hearing below, Appellant and Mr. Whitney testified that they thought they were entering into a financing transaction.[3]  In subsequent briefs, Appellees characterize the transaction as a sale and Appellant describes it as a sale of equity with an option to repurchase.  The bankruptcy court properly found that there was no evidence to support Appellant's contention that the deal was an equity sale with an option to repurchase.  (Bankr. Paper 68, 7 n.2).  Appellant's testimony directly undermines the equity sale and option characterization.  In response to why he waited eight months to record the deed, Appellant stated,

> I wanted to give them [the Whitneys] an opportunity to refinance.  When I got them to sign a deed it was just security.  I wasn't -- when I went into the transaction, I didn't think I would have to ever record the deed.  I just got it just so they wouldn't not pay me back my money.

(App. 64:6-11).  During his testimony, Appellant also agreed with his counsel's description of the transaction as a "bridge loan."  (App. 63:20-22).  Appellant never alluded to the Whitneys

---

[3] See App. 25:4-11; 26:18-27:6; 51:11-21; 52:18-53:4; 63:20-22; 64:4-11.

8

"repurchasing" anything from him, rather he consistently stated that he was loaning them funds so that they could refinance the Property and repay him.

In light of the unusual facts of the transaction, it is impossible to determine whether the transaction was a sale or a loan. The court will address the presence of reasonably equivalent value as the bankruptcy court did, by analyzing the transaction as both a sale and as a loan.

### A. The date of the transfer

Appellant insists that the transfer occurred on March 2, 2005, the date on which the Whitneys signed the deed. Appellees counter that the date of transfer was November 4, 2005, the date on which Appellant recorded the deed. The transfer date may be material because reasonably equivalent value is determined at the time of transfer and here, the fair market value of the Property increased from $250,000 in March to $315,000 in November. For the purpose of determining the date of transfer, it is irrelevant whether the transaction is characterized as a sale or a loan.

Section 548(d)(1) provides:

> For the purposes of this section, a transfer is made when such transfer is so perfected that a bona fide purchaser from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee, but if such transfer is not so perfected before the commencement of the case,

9

>such transfer is made immediately before the
>date of the filing of the petition.

The Real Property title of the Maryland Code, § 3-203 dictates that a transfer of real estate is perfected when the deed is recorded. Merely executing the deed, as the Whitneys did on March 2, would not secure a superior interest in the Property because a subsequent transferee could have recorded the deed before Appellant.[4] Appellant argues that § 548(d)(1) "is at odds with Maryland law as it relates to this case." (Paper 14, at 13). He does not specify what Maryland law contradicts § 548(d)(1), but in the proceedings below, he urged the bankruptcy court to rely on MD. CODE ANN., REAL PROP. § 3-201, which provides that the effective date of the deed is the date is it delivered.[5] In this case, the Whitneys delivered

---

[4] MD. CODE ANN., REAL PROP., § 3-203 provides,
>Every recorded deed or other instrument takes effect from its effective date as against the grantee of any deed executed and delivered subsequent to the effective date, unless the grantee of the subsequent deed has:
>>(1) Accepted delivery of the deed or other instrument:
>>>(i) In good faith;
>>>(ii) Without constructive notice under § 3-202; and
>>>(iii) For a good and valuable consideration; and
>>
>>(2) Recorded the deed first.

[5] MD. CODE ANN., REAL PROP., § 3-201 provides,
>The effective date of a deed is the date of delivery, and the date of delivery is presumed to be the date of the last acknowledgment, if any, or the date stated on the deed, whichever
>>(continued...)

10

the deed on March 2. The effective date of the deed is not necessarily the same as the date the transfer is perfected, however. Under § 548, an effective date of an unrecorded deed would be meaningless if a subsequent bona fide purchaser recorded the deed first. Accordingly, the effective date is irrelevant when determining whether a transfer should be avoided under § 548 and the date the transfer is perfected is the operative date. *See In re Jones*, 209 B.R. 380, 385 (Bankr. E.D.Va. 1997)(explaining, "the transfer took place on the date C & M recorded debtor's deed since this was the date under Virginia law that the conveyance became effective as to bona fide purchasers. VA. CODE ANN. § 55-96"). Therefore, § 548(d)(1) is not in conflict with Maryland law, it simply requires reference to a statute other than the one Appellant finds favorable to his case.

It is undisputed that Appellant recorded the deed on November 4, 2005. Accordingly, the court will affirm the bankruptcy court's conclusion that the date of transfer was November 4, 2005.

---

[5](...continued)
is later. Every deed, when recorded, takes effect from its effective date as against the grantor, his personal representatives, every purchaser with notice of the deed, and every creditor of the grantor with or without notice.

11

B.  **Reasonably Equivalent Value**

For the purpose of evaluating reasonably equivalent value under § 548, value is defined as "property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor." 11 U.S.C. § 548(d)(2)(a).  In the Fourth Circuit, reasonably equivalent value determinations are made on a case-by-case basis, considering such factors as the good faith of the transferee, the difference between the amount paid and the fair market value, and whether the transaction was "an arm's length transaction between a willing buyer and a willing seller." *In re Morris Commc'ns N.C., Inc.*, 914 F.2d 458, 467 (4th Cir. 1990) (citations omitted); *In re Brown*, 126 B.R. 481, 484 (Bankr. D.Md. 1991).  Reasonably equivalent value is not "wholly synonymous with market value, even though market value is an extremely important factor to be used in the Court's assessment of reasonable equivalence." *In re Morris*, 914 F.2d at 466.  The Supreme Court has explained that "reasonably equivalent" means "approximately equivalent" or "roughly equivalent." *BFP v. Resolution Tr. Corp.*, 511 U.S. 531, 539 n.4 (1994).  The court assesses reasonably equivalent value at the time of transfer.  While the determination of reasonable equivalence is fact intensive, it is ultimately a question of law reviewed *de novo*. *In re Brown*, 126 B.R. at 484.

1.  **Transfer as a sale transaction**

The bankruptcy court made the following factual calculations, which are not clearly erroneous. Per the parties' stipulations, as of November 4, 2005, the fair market value of the Property was $315,000 and there was $190,000 worth of deed of trust loans secured by the Property, leaving the Whitneys with $125,000 in equity at the time of the transfer. Appellant did not assume the existing loans, but rather took title subject to them. Therefore, the amount Appellant received on the date of the transfer was equity worth $125,000.

In return, from Appellant, the Whitneys received (1) $11,174.58, the payment to reinstate the mortgage; (2) $1,501.11, mortgage payment for April 2005; (3) $1,602, payment of homeowners' association fees; (4) $1,395, payment for property taxes; and (5) $426.40, payment for water and sewage. The bankruptcy court found, and the court agrees, that items (2) through (5) were made after the date of the initial transaction, but should be included in the reasonably equivalent value analysis because those payments benefitted the Whitneys, who were residents of the Property when the payments were made.

The bankruptcy court declined to include in the value received by the Whitneys Appellant's $3,700 recording fee, a hypothetical cost of sale in the amount of a 6% real estate broker's fee, and the value of the option to repurchase the property. The court

13

properly reasoned that the recording fee should be excluded because it did not benefit the Whitneys and therefore could not be considered value to them.

Similarly, the hypothetical broker's commission also was excluded properly. Appellant argues that the fee is a cost the Whitneys avoided by dealing with Appellant rather than with a traditional broker. The bankruptcy court pointed out the obvious flaw in this argument, which is that there is no evidence that Appellant performed any of the tasks of a broker, including marketing the Property to get the best sale price.

The bankruptcy court also declined to include the price of the "option to repurchase" the Property in the value received by the Whitneys. The court made a factual finding that the transaction did not include an option to repurchase. This finding was not clearly erroneous, as there is no evidence on the record that an option to repurchase was on the table. The bankruptcy court was correct in excluding value for the option.

For the first time on appeal, Appellant insists that the court add an amount to represent "the right of occupancy" he allowed the Whitneys to enjoy from March 2 to the present. Presumably, Appellant seeks to add the equivalent of a monthly rental fee to the value received by the Whitneys. The court will not address Appellant's new argument, as "issues raised for the first time on appeal generally will not be considered." *Muth v. United States*,

1 F.3d 246, 250 (4th Cir. 1993). Even if the court were to consider Appellant's argument, Appellant would fail. The Whitneys were paying their monthly mortgage during the period for which Appellant seeks value added as imputed rent. It would be patently unfair to attribute additional right of occupancy fees to the Whitneys where Appellant was not even making mortgage payments.

The deed itself stated that the conveyance from the Whitneys to Appellant was for consideration in the amount of $157,000. (Bankr. Paper 33, Ex. 6). Appellant testified that the $157,000 represented the assessed value of the Property at the time he prepared the Whitneys' documents. (App. 63:14-17). The bankruptcy court did not include this figure in its calculations, finding that it had no "valid economic justification in the record." (Bankr. Paper 68, 7 n.3). The court agrees, as $157,000 was not the total encumbrance on the Property, nor have the parties referenced the sum in relation to payments or debts owed.

In sum, the total value received by the Whitneys from Appellant was $16,099.09, as follows:

| 1 | $11,174.58 | To stop the foreclosure sale |
|---|---|---|
| 2 | $1,501.11 | April 2005 mortgage |
| 3 | $1,602.00 | Homeowners Association fee |
| 4 | $1,395.00 | Property Taxes |
| 5 | $426.40 | Water and Sewage Bill |
|   | $16,099.09 |   |

15

The Whitneys received a mere 13% of the $125,000 value they gave to Appellant. In his defense, Appellant urges the court not to base its comparison on the fair market value of the equity. Appellant insists that the conditions that create fair market value did not exist in this transaction, as it was made hastily under the pressure of an imminent foreclosure sale. He cites *BFP v. Resolution Trust Corp.*, which held that the value received at a state-sponsored foreclosure sale conclusively establishes reasonable equivalence, regardless of the property's potentially higher fair market value. 511 U.S. at 545. Appellant acknowledges that the present transaction was not a foreclosure sale with the attendant safeguards, but he maintains that the transaction was more like a foreclosure sale than an arm's length transaction. Despite Appellant's argument, fair market value is an "extremely important" measure in the reasonably equivalent value analysis outside of the forced-sale context. *See In re Morris*, 914 F.2d at 466. A comparison of the value received and the fair market value of the equity is a proper and necessary part of the analysis. *See id.*

As noted by Appellees, Appellant's emphasis on the exigencies of the March 2 deal is misplaced because the relevant date of transfer is November 4, at which time the parties were not pressured by foreclosure. Even if the court were persuaded by Appellant's exigency argument, it would have no basis to reach a

conclusion as to value, as Appellant never presented evidence of the likely value the Property could fetch at a closed sale. Moreover, as the bankruptcy court explained, the parties did not reach an agreement on value that was grounded in any market principles. Rather, neither party "understood nor intended that the amount paid by the Defendant was an approximation for any type of value of the Property, whether reasonably equivalent or fair market." (App. 92).

The Whitneys received an appallingly small percentage of the value of the equity they sold Appellant. The value received by the Whitneys was not reasonably, roughly, or approximately equivalent to the value received by Appellant and therefore the transfer, if viewed as a sale, is avoidable under § 548(a)(1)(B).

**2. Transfer as a loan transaction**

The transfer also is avoidable when analyzed as a loan transaction. The bankruptcy court made the following calculations, which are not clearly erroneous. The Whitneys signed a promissory note for $32,000. Appellant advanced $11,174.58 at the time the parties executed the note. As outlined *supra* part III.B.1., Appellant subsequently paid $4,924.51 in additional fees and a mortgage payment. When he recorded the deed, he satisfied the balance of the note, thus giving the Whitneys additional value. *See* 11 U.S.C. § 548(d)(2)(A) ("'value' means . . . satisfaction . . . of a present or antecedent debt of the debtor"). In the loan

17

scenario, the bankruptcy court properly included the $3,700 recording fee as part of the calculation because the Whitneys received value when the deed was recorded. *See also In re Jones*, 209 B.R. at 385 (noting that the recording fee was "reasonably foreseeable if C & M was required to enforce its rights against the property."). Therefore, the Appellant advanced and the Whitneys received a total of $19,799.09. Even imputing a reasonable fee for Appellant, once again the value he advanced is shockingly less than the $125,000 given by the Whitneys.

Appellant's good faith is seriously in doubt in this transaction. As described by the bankruptcy court, Appellant did not act as a reasonable lender by providing a demand or notice of any kind to the Whitneys before recording the deed. Further, he made no secret about the potentially exorbitant fee he reserved for himself for undertaking the transaction. In light of the grave disparity between values given and received, the transfer of the Property is avoidable whether considered a sale or a loan transaction.

### VI. Conclusion

For the foregoing reasons, the court shall affirm the judgment of the bankruptcy court avoiding the transfer of the Property from the Whitneys to Appellant. A separate Order will follow.

```
                                    /s/
                        ```
DEBORAH K. CHASANOW
United States District Judge